UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOYCE STEVENS,<br><br>    Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 3:21-cv-00043<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

Plaintiff Joyce Stevens filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Before the Court is Stevens's motion for judgment on the administrative record (Doc. No. 17), to which the Commissioner has responded in opposition (Doc. No. 18). Having considered the parties' arguments and the administrative record (Doc. No. 15) as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Stevens's motion.

**I.    Background**

    **A.    Stevens's SSI Application**

Stevens applied for SSI on July 1, 2018, alleging that she has been disabled and unable to work since July 30, 1986, because of intellectual limitations, illiteracy, inability to understand

money, shoulder problems, back problems, and hip problems. (AR 49.[1]) Stevens later amended her alleged disability onset date to July 1, 2018. (AR 32.) The Commissioner denied Stevens's application initially and on reconsideration. (AR 61, 77.) At Stevens's request, an administrative law judge (ALJ) held a telephonic hearing regarding her application on May 7, 2020. (AR 28–47.) Stevens appeared with a non-attorney representative and testified. (AR 30, 33–40.) The ALJ also heard testimony from a vocational expert. (AR 40–46.)

### B. The ALJ's Findings

On May 20, 2020, the ALJ issued a written decision finding that Stevens was not disabled within the meaning of the Social Security Act and denying her claim for SSI. (AR 15–24.) The ALJ made the following enumerated findings:

> 1. The claimant has not engaged in substantial gainful activity since July 1, 2018, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: learning disability, borderline intellectual functioning, and posttraumatic stress disorder (20 CFR 416.920(c)).
>
> \*     \*     \*
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> \*     \*     \*
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform no duties or tasks that require reading or writing nor can she perform any tasks that require performing mathematical calculations; can understand, remember, and carry out only simple, unskilled, repetitive, and one to two step tasks; can maintain adequate concentration, persistence, and pace on only simple,

---

[1] The transcript of the administrative record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

unskilled, repetitive, and one to two step tasks throughout an eight-hour workday with customary work breaks; should have no more than occasional interaction with the general public on a brief and superficial basis; can interact appropriately with supervisors and coworkers for task completion; and can adapt to only infrequent changes that are gradually introduced into the workplace.

\* \* \*

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July 30, 1968 and was 49 years old, which is defined as a younger individual age 18–49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant is illiterate and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 1, 2018, the date the application was filed (20 CFR 416.920(g)).

(AR 17–24.) The Social Security Appeals Council denied Stevens's request for review on November 18, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

C. **Appeal Under 42 U.S.C. § 405(g)**

Stevens filed this action for review of the ALJ's decision on January 19, 2021 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Stevens argues that the ALJ erred in considering her disabling mental health symptoms, in determining that her medical impairments do not meet and are not medically equivalent to one of the impairments on the SSA's list of impairments considered severe enough to be disabling, and in formulating her residual functional

capacity. (Doc. No. 17-1.) The Commissioner responds that substantial record evidence supports the ALJ's determinations. (Doc. No. 18.) Stevens did not file an optional reply.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

Stevens applied for SSI under Title XVI of the Social Security Act, which "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). "Disability" is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies to SSI claims under Title XVI as well as disability insurance benefit claims under Title II).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). "If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995). At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 416.920(a)(4)(iii). "If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant

is conclusively presumed to be disabled without further analysis." *Garcia*, 46 F.3d at 554 n.2. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity" 20 C.F.R. § 416.920(a)(4), which is defined as "the most [the claimant] can still do despite [her] limitations" *id.* § 416.945(a)(1); *see id.* § 416.920(a)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, "benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of her residual functional capacity, age, education, and work experience, a claimant can perform other substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "If the claimant is able to perform other work in the national economy, . . . benefits are denied." *Garcia*, 46 F.3d at 554 n.2. If the claimant is unable to perform other work, the ALJ will find that the claimant is disabled.

**III.     Analysis**

The ALJ found that Stevens's severe impairments included "learning disability, borderline intellectual functioning, and posttraumatic stress disorder." (AR 17 (citing 20 C.F.R. § 416.920(c)).) However, the ALJ determined that Stevens's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms [were] not entirely consistent with the

medical evidence and other evidence in the record . . . ." (AR 21.) In reaching this conclusion, the ALJ found that:

> the record does not document any mental health treatment, let alone any psychiatric hospitalizations or other evidence of psychological decompensation; and the record certainly does not document any ongoing objective clinical manifestations of a significant mental pathology that would have been expected to produce more than minimal functional limitation for a period of 12-consecutive months since the application date . . . .[2]

(AR 22.)

Stevens argues that this portion of the ALJ's analysis lacks the support of substantial evidence and violates SSA regulations. She points to record evidence that she told consulting psychological examiner James Cowie, Psy.D., "that she was hospitalized for a suicide attempt when she was getting divorced" and argues that the ALJ made no effort to obtain those hospitalization records as required by SSA regulations. (Doc. No. 17-1, PageID# 361 (citing AR 255–56).) Stevens further argues that the ALJ "did not consider [ ] Stevens'[s] inability to afford treatment" as required by Social Security Ruling 16-3p before relying on her failure to obtain mental health treatment as a reason to discredit her statements about her symptoms. (*Id.*) In particular, Stevens argues that the ALJ failed to consider evidence that she "sought patient financial assistance, was only able to obtain treatment from community health departments, and often missed appointments because she had no transportation." (*Id.* (citing AR 229–53, 266–91).)

The Commissioner responds that the ALJ was not obligated to consider Stevens's reported suicide attempt because "[t]his past hospitalization appears to be irrelevant to the time period at issue, which is the date of her SSI application through the date of the decision." (Doc. No. 18,

---

[2] The ALJ made the same finding in determining that Stevens does not have an impairment or combination of impairments that meets or medically equals the severity of listing 12.05, which covers intellectual disorders, or listing 12.15, which covers trauma- and stressor-related disorders. (AR 18.)

PageID# 377–78.) The Commissioner further argues that "[t]he provisions discussed in SSR 16-3p involving the inability to afford treatment would only be applicable if [Stevens] did not receive mental health care due to financial reasons" and asserts that the record evidence Stevens cites regarding financial assistance has to do with "get[ting] an x-ray done . . . [at] a reduced rate" and "[t]he health department records do not reflect any particular concern with [Stevens's] mental status nor does it appear that she was referred for treatment she had to decline due to finances." (*Id.* at PageID# 378 (citing AR 266–91).)

SSA regulations require an ALJ determining disability to "consider all [of the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). The SSA has promised claimants that it "will not evaluate an individual's symptoms without making every reasonable effort to obtain a complete medical history unless the evidence supports a finding that the individual is disabled."[3] SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016); *see also* 20 C.F.R. § 416.929(c)(2) (providing that the ALJ "must always attempt to obtain objective medical evidence and, when it is obtained, . . . consider it in reaching a conclusion as to whether [the claimant is] disabled"). Section 416.929(c)(3) allows an ALJ to consider an SSI claimant's current and past treatment in evaluating the claimant's alleged symptoms. 20 C.F.R. § 416.929(c)(3)(v). The SSA has explained that, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," then the SSA

---

[3] In this context, a "complete medical history" means the claimant's "complete medical history for at least the 12 months preceding the month in which he or she filed an application, unless there is a reason to believe that development of an earlier period is necessary or the individual says that his or her alleged disability began less than 12 months before he or she filed an application." SSR 16-3p, 2016 WL 1119029, at *4 n.8 (Mar. 16, 2016).

"may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2016 WL 1119029, at *8. However, the SSA "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Examples of such reasons include the fact that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services[,]" that "mental limitations" may prevent an individual from "understand[ing] the appropriate treatment for or the need for consistent treatment of his or her impairment[,]" and that an individual with "a mental impairment . . . may not be aware that he or she has a disorder that requires treatment." *Id.* at *9. These examples are illustrative, not exhaustive, and the SSA "will consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [it] considered the individual's reasons in [its] evaluation of the individual's symptoms." *Id.*

In evaluating Stevens's mental health symptoms, the ALJ found that "the record does not document any mental health treatment, let alone any psychiatric hospitalizations or other evidence of psychological decompensation[.]" (AR 22.) That finding lacks the support of substantial evidence. In fact, the record evidence of Stevens's mental health treatment begins with a psychological report from Stevens's elementary school psychologist documenting that Stevens "[h]a[d] been seen at [a] Mental Health Center" because she "was abused by [her] natural parents[.]"[4] (AR 156.) Dr. Cowie documented in his consulting psychological evaluation that "Stevens reported that she tried to commit suicide when she was getting divorced, and she was

---

[4] The psychologist further noted that Stevens was "[i]n foster care" and "ha[d] spent very little time in school in [the] past" because of her "unstable background." (AR 156.)

hospitalized." (AR 256.) Despite this evidence that Stevens was, in fact, hospitalized for mental health reasons, the ALJ did not obtain records or other information regarding that hospitalization. The ALJ therefore failed to "mak[e] every reasonable effort to obtain a complete medical history" before evaluating Stevens's mental health symptoms, in violation of Social Security Ruling 16-3p and 20 C.F.R. § 416.929(c)(2). Under these circumstances, it was "improper" for the ALJ to "re[ly] on the absence of mental health treatment to discredit [Stevens's] testimony . . . without attempting to further develop the record." *Threet v. Comm'r of Soc. Sec.*, No. 14-10291, 2015 WL 1510684, at \*6 (E.D. Mich. Mar. 30, 2015).

The Commissioner's argument that Stevens's "hospitalization appears to be irrelevant to the time period at issue" does not counsel otherwise. (Doc. No. 18, PageID# 378.) Courts have found that "because 'the symptoms of mental illness wax and wane over time,' an 'ALJ may not pick and choose helpful evidence when analyzing mental illness[,] but rather must consider the longitudinal evidence of a claimant's symptoms.'" *Dodson v. Soc. Sec. Admin.*, No. 2:20-cv-00048, 2022 WL 709185, at \*1 (M.D. Tenn. Mar. 9, 2022) (alteration in original) (quoting *Stafford v. Kijakazi*, No. 4:20-cv-1011, 2022 WL 358061, at \*8 (W.D. Mo. Feb. 7, 2022)); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(5)(a) (recognizing SSA's "[n]eed for longitudinal evidence" in evaluating "mental disorder[s]" to "learn how [the claimant] function[s] over time" and "evaluate any variations in the level of [the claimant's] functioning"). Further, it is undisputed that the ALJ relied on his conclusion that Stevens had not received "any" mental health treatment—in any time period—in evaluating the limiting effects of her reported mental health symptoms. (AR 22.)

Stevens argues that the ALJ violated SSR 16-3p by failing to consider and address possible reasons why she did not pursue mental health treatment, including specific record evidence of her

poverty. (Doc. No. 17-1.) The Commissioner's argument that Stevens has only pointed to record evidence of the effect of her poverty on her ability to obtain treatment for her physical health and not her mental health (Doc. No. 18) displays a disregard for SSA regulations, the record evidence, and common sense. The SSA has promised claimants that it will consider any "possible reasons" "pertinent to an individual's case" regarding failure to seek or receive treatment and will explain how it considered those reasons in evaluating the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *8–9. Poverty is one recognized reason; mental limitations and impairments are another. *Id.*; *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself.").

The record in this case includes substantial evidence of Stevens's poverty, intellectual limitations, and history of trauma pertinent to assessing Stevens's reasons for not seeking mental health treatment. Stevens offers evidence to show that the only health care she could afford was offered through the Dickson County Health Department and that she struggled to access that care because she had limited access to transportation. (AR 229–53, 266–91.) The record also shows that Stevens has never earned her own income and lives in a trailer with her husband, who does not work and receives disability payments. (AR 34, 37, 39.) Evidence of Stevens's intellectual limitations include significantly low IQ test scores from childhood and adulthood (AR 217–28, 254–61), evidence that Stevens received very limited special education (AR 42, 146–62, 217–28), and evidence that she is functionally illiterate (AR 34–35, 255). There is also evidence that Stevens was physically and sexually abused by her father as a child and abused again by her children's father. (AR 40, 156, 255, 279.)

Because there is no indication that the ALJ considered any of these factors, all of which are relevant to Stevens's failure to seek mental health treatment, before relying on that purported failure to discredit Stevens's mental health symptoms, the ALJ failed to follow SSA rules and regulations governing consideration of claimants' symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *9. Where, as here, "an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722). Remand is therefore warranted for reconsideration of reasons why Stevens did not pursue mental health treatment. On remand, the ALJ should make every reasonable effort to obtain a complete medical history before reevaluating Stevens's mental health symptoms in accordance with Social Security Ruling 16-3p and 20 C.F.R. § 416.929(c).

Because remand is warranted on these grounds—and because reconsideration of Stevens's reasons for not pursuing mental health treatment and consideration of any additional medical records obtained on remand may also require reconsideration of whether Stevens's impairments meet or medically equal a listed impairment and of her RFC—the Court need not address Stevens's remaining arguments regarding the ALJ's listing analysis and RFC finding. *See Misty D. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-00378, 2022 WL 714233, at *5 & n.5 (S.D. Ohio Mar. 10, 2022) (declining to address claimant's remaining arguments where remand was warranted for reconsideration of claimant's possible reasons for failing to seek mental health treatment), *report and recommendation adopted*, 2022 WL 889256 (S.D. Ohio Mar. 25, 2022); *Wyrich v. Soc. Sec. Admin.*, No. 3:20-cv-00682, 2022 WL 526488, at *6 (M.D. Tenn. Feb. 22, 2022) (declining to address claimant's remaining arguments where remand was "warranted for reconsideration of possible reasons why [claimant] did not pursue treatment for his back pain"), *report and*

*recommendation adopted by* Order, *Wyrich v. Soc. Sec. Admin.*, No. 3:20-cv-00682 (M.D. Tenn. Mar. 17, 2022), ECF No. 27. If necessary, Stevens may raise these issues again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

IV. **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Stevens's motion for judgment on the record (Doc. No. 17) be GRANTED, that the Commissioner's final decision be VACATED, and that this matter be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 18th day of August, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

13

Case 3:21-cv-00043    Document 19    Filed 08/18/22    Page 13 of 13 PageID #: 392